UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brian K. Berry, | ) C/A No. 5:13-736-DCN-KDW |
| | ) |
| Plaintiff, | ) |
| | ) REPORT AND RECOMMENDATION |
| vs. | ) |
| Dr. Tomarchio, SCDC Official, | ) |
| | ) |
| Defendant. | ) |

Brian K. Berry ("Plaintiff"), was an inmate in the South Carolina Department of Corrections ("SCDC") prison system when he filed this 42 U.S.C. § 1983 action alleging that Defendant violated his constitutional rights.[1] This matter is before the court on the Motion for Summary Judgment filed by Defendant John B. Tomarchio, M.D. on October 22, 2013. ECF No. 66. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[2] on October 23, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 67. Plaintiff responded to Defendant's Motion on January 21, 2013. ECF No. 79. The time for any reply from Defendant passed without any submission, making this Motion ripe for consideration. ECF No. 85. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. §

---

[1] A mailing the court sent to Plaintiff on February 18, 2014 at the address he provided as his only mailing address was returned "undelivered." ECF No. 86. No forwarding address was provided and a search of the SCDC inmate locator with Plaintiff's name and with his inmate number turned up no response, indicating that Plaintiff has been released from custody, but has not updated his address with this court.

[2] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(d) and (e) (D.S.C.). Because Defendant's Summary Judgment Motion is dispositive, a Report and Recommendation is entered for the court's review.

I. Background

Plaintiff brought this action under 42 U.S.C. § 1983 seeking damages and injunctive relief for alleged constitutional violations regarding medical care he received at three different SCDC prisons (Turbeville, Trenton, Kershaw) between September 2012 and April 2013 for an on-going in-grown toenail/infection problem with his right great toe. Compl., ECF No. 1.

In his Complaint, Plaintiff alleged that he received some treatment for painful, persistent problems with his right great toe, but he contended that his toe was not improving and was, instead, getting worse after about two years of antibiotic treatment. Compl. 3, ECF No. 1. According to Plaintiff, he was told by various prison personnel (not named as defendants in this case) that he needed to see outside doctors and/or have surgery, but he stated that "medical" kept denying him outside treatment and "medical shoes." *Id*. at 1-3. Plaintiff asserted that he needs immediate treatment or he might lose his toe. *Id*. at 3; ECF No. 1-2 at 5.

The only Defendant named in this case is Dr. Tomarchio, the SCDC Medical Director. Compl. 1, ECF No. 1; *see also* Tomarchio Aff., ECF No. 66-2. The only allegations of direct involvement by Defendant Tomarchio in Plaintiff's on-going care are that he denied a request "for medical shoes" for Plaintiff that was allegedly submitted by Dr. Drago at Turbeville Correctional Institution in October 2012, ECF No. 1-2 at 3, and that he also denied a request sent by Dr. McCree from Trenton Correctional Institution on March 13, 2013 for Plaintiff to be sent to "a podiatry clinic." *Id*. Plaintiff seeks injunctive relief in the nature of an order for

2

"defendant . . . to stop doing harmful and unconstitutional things to me." *Id*. at 5. He also seeks nominal and compensatory damages in the amount of $150,000.00. *Id*.

II. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can

ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

   III.   Analysis

Defendant Dr. Tomarchio moves for summary judgment, contending that Plaintiff's injunctive relief claim is moot because the prison medical records show that Plaintiff did receive authorization for a podiatry consultation, attended the appointment, and his toe complaints ceased thereafter. ECF No. 66-1 at 1-3. Defendant further contends that summary judgment is appropriate because Plaintiff cannot show that Defendant was "deliberately indifferent to a serious medical need" or that he violated any of Plaintiff's constitutional rights. *Id*. at 3-5. Defendant contends that his limited personal involvement in Plaintiff's care was "within the standard of care," which, as a prison medical director, requires that he receive adequate documentation of the need for special services for a prisoner. *Id*. at 1-2, 5-6. He also contends that he is not liable for any negligence on the part of any other SCDC medical provider. *Id*. at 5-6. Finally, Defendant contends that, instead of medical indifference, the undisputed material facts show that "[P]laintiff received adequate, quality medical care . . . ," *id*. at 6, and Plaintiff has not presented the type of expert evidence required to counter that opinion. *Id*. at 5.

Plaintiff responds that summary judgment should not be entered in Defendant's favor because the prison medical records show that he experienced much physical and emotional pain throughout the long period of time that his toe remained under the care of the prison medical staff. Resp. 1, ECF No. 79. He contends that he has "permanent medical injurys [sic] because medical at SCDC did not treat [his] medical issues appropriately." *Id*. In his brief Response to the Motion

4

for Summary Judgment, Plaintiff restates his original contention that the medical care he received was deficient because it took too long for the toe condition to be corrected through the conservative treatment he received at SCDC over the course of approximately eight months at three different prisons. *Id*. Plaintiff refers to numerous encounters with prison medical staff documented in SCDC medical records showing his continuing complaints about his toe problem and the resulting physical and emotional pain, and his many sick-call visits.[3] *Id*.; ECF No. 79-1 at 1-11; ECF No. 79-3 at 2-4, 10-31. Plaintiff concludes his response with statements about physical, mental, and emotional pain that he experienced during the period he sought out treatment for his toe and references to opportunities for parole and custody-level improvement that he allegedly lost because of his reactions to that pain. Resp. 1, ECF No. 79. He restates his belief that he was not "medically assessed appropriately with SCDC officials" and asks this court not to dismiss his Complaint and to grant him relief. *Id*.

The applicable law in this area holds that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson v. Seiter*, 501

---

[3] Over fifty-two toe-related "encounters" between September 18, 2012 through May 9, 2013, during which Plaintiff received some type of medical care, are documented in the SCDC records. ECF No. 66-2 at 9-41 (encounters 150, 141-43, 136-37, 129-32, 122-26, 115-20, 109-11, 104-05, 102, 97-100, 88-95, 77-85, 69-75).

U.S. 294, 297 (1991). "Although the Constitution does require that prisoners be provided with a certain *minimum level of medical treatment*, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988)(emphasis added). Constitutionally, the state is required to furnish prisoners only reasonable care. *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1977). While the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326, 329 n.2, 331 (S.D. Ga. 1994)(collecting cases). A simple difference in medical opinion also does not amount to a constitutional violation. *See Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). This court has held that "[t]he mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation." *Hicks v. Southern Health Partners*, No. 8:08–3940–CMC–BHH, 2009 WL 2750005, *5 (D.S.C. Aug. 25, 2009)(citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975)("Questions of medical judgment are not subject to judicial review.")).

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 837. In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986). The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008). A medical

6

condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Additionally, in order to assert a plausible § 1983 claim against any particular public official, a "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). A plaintiff suing a government official in his individual capacity and thereby seeking to hold the official personally liable must show that the official personally caused or played a role in causing the complained-of deprivation of a federal right. *See Graham*, 473 U.S. at 166. Specifically, a plaintiff cannot maintain a claim against a supervisor unless the plaintiff alleges "that the supervisor had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to plaintiff, "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (internal quotation marks omitted).

In support of his Motion for Summary Judgment, Defendant submits an Affidavit in which he denies any personal involvement in the medical care and treatment that Plaintiff received for his toe. Tomarchio Aff., ECF No. 66-2 at 2. Defendant states that his denials of the requests for "sneakers from the prison canteen" (not "medical shoes") and for an appointment with a podiatry clinic were appropriate because the requests were "not justified by the information provided" to support the requests. *Id*. Defendant also states that the prison medical records show that

7

Defendant properly directed prison medical staff to try conservative treatment for Plaintiff ("partial toenail removal, soaks, wound care, and antibiotics [prescribed] by prison medical staff") before a surgical consultation would be authorized. *Id*.  Dr. Tomarchio further avers that when additional information about Plaintiff's toe condition was submitted to him after his initial denial of the requests for a podiatry clinic surgical consultation for Plaintiff, he did approve the request. *Id*.  Defendant attests that he approved the consult on April 9, 2013, and the attached medical records show that Plaintiff had an appointment at the podiatry clinic on May 9, 2013. *Id*. at 2, 16 (encounter 110).  Dr. Tomarchio also cites to a reference in the prison medical records showing that Plaintiff informed medical staff at Trenton Correctional Institution on April 12, 2013 (the same day this case was filed) that his toenail was removed "by a doctor while at 'GPH'"[4] before the authorized podiatry consultation. *Id*. at 15 (encounter 115).  According to Defendant's Affidavit, Plaintiff made "no significant complaints" about the toe problem thereafter. *Id*. at 2. Defendant Tomarchio also cites to Plaintiff's medical records which show that Plaintiff was personally seen, examined, and provided medical care by prison medical personnel for complaints about his toe on more than fifty separate occasions between January 2012 and May 2013. ECF No. 66-2 at 9-41 (encounters 150, 141-43, 136-37, 129-32, 122-26, 115-20, 109-11, 104-05, 102, 97-100, 88-95, 77-85, 69-75).

Plaintiff does not argue that Defendant's initial rejections of the two special requests submitted on his behalf were unreasonable, nor does he dispute Defendant's Affidavit wherein he states that the rejections were based on the need for additional information from the medical providers who submitted the requests. Resp. 1, ECF No. 79.  However, even if Plaintiff did specifically argue that Defendant's decisions on the two requests were unreasonable, the evidence

---

[4] Neither party indicates what "GPH" stands for.

does not support such an argument. Instead, the undisputed facts show that Defendant Tomarchio promptly reviewed and considered the two requests for special treatment or supplies for Plaintiff to determine, as his position of Medical Director required, the extent of support provided by the requesting prison physician to show the medical necessity of those requests. ECF No. 66-2 at 9, 18, 27, 38-39. Defendant did not ignore the requests, nor did he excessively delay his responses to those requests. *Id*. The prison medical records show that the request for "sneakers from the canteen," which was rejected by Defendant on October 4, 2012, was never renewed by any of Plaintiff's treating physicians. *Id*. at 38-39. Although Defendant initially denied the original January 25, 2013 request and the updated March 13, 2013 request from prison physicians for authorization of a visit for Plaintiff to the podiatry clinic, his denials included requests for additional information and Plaintiff was told that he could appeal to Defendant. *Id*. at 27, 19. The records and Defendant's Affidavit show that Defendant approved the requested visit on April 9, 2013, after the prison doctor appealed the initial denials and provided Defendant with additional information about Plaintiff's condition. *Id*. at 2, 16. The records further show a continuation of regular sick-call visits and treatments for Plaintiff's great toe thereafter, leading up to the May 9th appointment for a podiatry consultation, after which no further complaints from Plaintiff about his toe are shown. *Id*. at 5-8, 9-16.

All that is shown by the undisputed facts presented in this case is a disagreement by this prisoner with the nature and extent of the medical care he received during and between his many visits to the medical staff at Turbeville, Trenton, and Kershaw prisons. Under applicable law, that is not sufficient to show medical indifference. *See Bowring v. Godwin*, 551 F.2d at 48. Independent review of the prison medical records provided to the court show that the staff at all

three prisons involved attended to Plaintiff's toe on a constant basis, thus demonstrating a lack of intent on anyone's part to ignore his medical concerns. Plaintiff's statements about "permanent injurys [sic]" in his Response to the Motion for Summary Judgment are not specific as to his toe, and there is no medical evidence in the case that supports those statements. Moreover, as Defendant points out, Plaintiff does not provide any medical expert testimony to support his claim that the medical care he received from Defendant was not appropriate.

The undersigned has reviewed the record, including the parties' pleadings, Defendant Tomarchio's Affidavit, and Plaintiff's medical records, and finds that Plaintiff has failed to furnish facts or evidence sufficient to survive summary judgment. There is nothing in the record before this court showing medical indifference by Defendant or by anyone involved in Plaintiff's medical care, nor is there anything showing that the only Defendant in this case was knowingly and personally involved in any alleged negligence of other medical staff members to such an extent that he could be subjected to vicarious liability for their shortcomings, if any. In the absence of the required medical indifference, no basis is shown for an award of damages against Defendant under § 1983 or any other federal law. Also, as previously stated, shortly before Plaintiff filed this case, he received authorization from Defendant to go to the podiatry clinic on May 9, 2013. The records show that after that visit, all of his toe complaints stopped and he even stopped going to prison medical staff for wound care. ECF No. 66-2 at 5-9. Thus, Plaintiff's broadly stated claim for injunctive relief was moot when submitted because there is no showing that Defendant ever did anything harmful or unconstitutional to Plaintiff. Accordingly, the undersigned recommends granting Defendant Tomarchio's Motion for Summary Judgment.

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Tomarchio's Motion for Summary Judgment, ECF No. 66, be **granted**, and that Plaintiff's Complaint be dismissed.

IT IS SO RECOMMENDED.

May 6, 2014                                Kaymani D. West
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 2317
> Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).